UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NORANDA ALUMINA, LLC                                   CIVIL ACTION

VERSUS                                                 NUMBER: 16-16677

ASSOCIATED TERMINALS, LLC                              SECTION: "J"(5)

## REPORT AND RECOMMENDATION

Before the Court for a Report and Recommendation to the presiding District Judge is Defendant's, Associated Terminals, LLC's ("Associated's), motion to dismiss with prejudice for failure to comply with a court order and abuse of discovery. (Rec. doc. 17). The motion is opposed by Plaintiff, Noranda Alumina LLC ("Noranda"). (Rec. doc. 23). Associated filed a reply memorandum (rec. doc. 24) and the Court held a hearing on the motion, the transcript of which is also in the record. (Rec. docs. 29, 31).

After carefully considering the pleadings and arguments of counsel and taking into account its multiple and ongoing interactions with the parties and their counsel throughout the discovery process in this case, the Court recommends that the motion be granted and that the claims of Noranda in this lawsuit be dismissed with prejudice.

### A. Relevant Procedural History

This matter involves competing property damage claims asserted by each party against the other relating to the partial collapse of Noranda's "Gramercy Dock" structure. That collapse occurred on March 16, 2016. (Rec. doc. 17-1 at p. 3). Shortly thereafter, on May 9, 2016, Associated alleges that it discovered significant damage to its vessel, the MISS

TARA, which had continued to service the Gramercy Dock, even after the partial collapse. (Rec. doc. 1-2 at p. 79). Associated claims that the damage was caused by submerged portions of the collapsed dock structure. (*Id.*). After discovering the damage, Associated invited Noranda to participate in a joint survey of the damage and sent invoices to Noranda requesting reimbursement and payment for repairs. (*Id.*). Up to that point, Noranda had not notified Associated that it believed the latter was responsible for the dock structure collapse in any way.

Less than a month later, on June 6, 2016, Noranda made its initial claim against Associated for the dock structure collapse, in the form of an adversarial proceeding filed by Noranda in its Voluntary Chapter 11 Bankruptcy proceeding in the United States Bankruptcy Court for the Eastern District of Missouri, which it had instituted on February 8, 2016.[1] At the time that Noranda filed its Bankruptcy petition, Associated alleges it was owed over $1,300,000 by Noranda. (Rec. doc. 1-2 at p. 77). As an unsecured creditor, Associated states it has recovered none of those accounts receivable.

On August 4, 2016, Associated filed an answer and counterclaim in the adversarial proceeding, seeking to recover against Noranda for the damage caused to its vessel that was discovered on May 9, 2016. (Rec. doc. 1-1 at p. 6). On August 10, 2016, Associated issued to Noranda the written discovery that is subject of the present motion, responses to which were due on September 28, 2016. Noranda did not respond. (Rec. doc. 7).

When the bankruptcy proceeding was closed, on November 23, 2016, Noranda transferred the competing claims to this Court. (Rec. doc. 1).

---

[1] *See* In re *Noranda Alumina, Inc. et al.*, No. 16-10083 on the docket of the United States Bankruptcy Court for the Eastern District of Missouri, Southeastern Division.

The post-transfer procedural history germane to this Court's determination of the present motion is set forth below:

- On March 23, 2017, the District Judge issued a Scheduling Order in this case, setting the following notable deadlines and dates:

    - Plaintiff's expert reports due      August 9, 2017
    - Pretrial motion deadline           September 26, 2017
    - Discovery deadline                 October 6, 2017
    - Trial                                   December 4, 2017

- Beginning on May 3, 2017 and then again on June 12, 2017 and July 13, 2017, Associated's counsel inquired regarding Noranda's by then long-overdue responses, and warned that Associated would file a motion to compel if Noranda failed to timely provide responses. (Rec. doc. 7-3).

- Associated's counsel convened a Rule 37 discovery conference on August 3, 2017 and a second conference on August 10, 2017. (Rec. doc. 7). Despite the two discovery conferences, Noranda still did not provide responses to Associated's discovery requests – now more than a year overdue.

- On August 11, 2017, Associated requested dates for corporate depositions and the depositions of fact witnesses Pat Harrington, Lezlie Jones, Todd Bland and Gary Caro. Dates were not provided by Noranda. (Rec. doc. 17-11).

- On August 14, 2017, Associated filed its Motion to Compel. (Rec. doc. 7).

3

- On August 22, 2017, counsel for Noranda filed a two-and-a-half page opposition memorandum to Associated's motion to compel, suggesting that "from Noranda's side, the slow response to Associated's discovery must lay at my feet" because he had been busy attending to another case and further stating that he was "endeavoring to provide Noranda's responses to Associated's discovery prior to the motion hearing on August 30, 2017." (Rec. doc. 9 at p. 2).

- On August 23, 2017 and August 28, 2017, Associated again sent correspondence to Noranda, seeking dates for the depositions of Noranda's fact witnesses. Again, no dates were forthcoming. (Rec. doc. 17-11).

- On August 30, 2017, after the hearing on the motion to compel, the Court ordered Noranda to fully and formally respond to the outstanding discovery within 14 days, without objection. (Rec. doc. 10). The Court held Associated's request for reasonable expenses, including attorneys' fees, in abeyance pending compliance with the Order.

- On August 28, 2017 and September 1, 2017, Associated issued a subpoena and Notice of 30(B)(6) corporate deposition to Noranda and Noranda's apparent successor entity, New Day Aluminum, LLC ("New Day"). Noranda and New Day's responses would have been due on September 27 and October 2, 2017, respectively. (Rec. doc. 17-11). No responses were provided. (*Id.*).

- On September 1, 2017, Associated's counsel, for the third time, requested deposition dates for fact witnesses by the close of business on September 6, 2017.

- On September 13, 2017, the deadline ordered by this Court for Noranda to provide full and complete responses to written discovery, counsel for Noranda asked Associated's counsel for an additional "day or two" to respond.  (Rec. doc. 17-5).  Counsel for Noranda did not request an extension from this Court.

- That same day (when responses were due as per this Court's order) Noranda's counsel requested certain material, responsive information from his client.[2]  (Rec. doc. 17-8).

- On September 15, 2017, two days after this Court ordered full and complete responses, Noranda provided partial, incomplete responses[3] to Associated.  (Rec. doc. 17-7).

- On October 10, 2017, due to Noranda's and New Day's failure to respond to Associated's Notice of 30(B)(6) corporate deposition, Associated unilaterally noticed the corporate depositions for October 25 and 26, and again notified Noranda of its overdue responses to the Corporate Deposition Notices.  (Rec. doc. 17-12).

---

[2]  Associated suggests that this request was the first time counsel for Noranda requested from his client this important information, which was an estimate for repairs to the dock – an obviously key piece of evidence. When asked directly at the hearing by the Court if this was the first time he requested that evidence, counsel suggested he had asked for it sometime earlier.  (Rec. doc. 31 at pp. 6-8).  The rambling account provided by counsel is hardly convincing in this regard, but even crediting that account the fact remains that, on the day the Court ordered all of Noranda's responses to be provided, counsel was just getting around to asking for key documentation he knew he had not yet produced.

[3]  The Court will discuss below the reasons the responses were partial and incomplete.

5

- Following up on Noranda's incomplete October 10 responses, on October 12, 2017, Associated requested that Noranda "produce all responsive documents within seven days or issue supplemental discovery responses certifying that no such documents exist." (Rec. doc. 17-9).

- One week before the noticed depositions, on October 18, 2017, Associated's counsel yet again requested complete responses to its written discovery. (Rec. doc. 17-13).

- Noranda's ongoing failure to respond to these requests caused Associated's counsel to request a telephone conference with this Court, during which the Court was first informed that Noranda did not "own" the claim that it was asserting as the nominal plaintiff in this matter. The Court directed counsel for Noranda to inform it and Associated within 48 hours of the identity of the real party in interest that owns the claim being asserted by Noranda in this matter.

- On October 25, counsel for Noranda complied with that directive, informing the Court that the true owner of the claim is non-party, Gramercy Holdings I, LLC ("Gramercy Holdings"), and further informing the Court that there were no funds remaining in the estate of the bankrupt debtor (Noranda) to satisfy any judgment against it in this case. (Rec. doc. 30).

- On November 7, 2017, owing to a conflict in his trial calendar, the District Judge issued an order continuing the November 9, 2017

pretrial conference and December 4, 2017 trial. (Rec. doc. 16). The District Judge later set a new trial date of March 5, 2018, with a pretrial conference to be held on February 18, 2018. (Rec. doc. 19). The District Judge specifically declined to extend or reset any other deadline, all of which had already passed. (*Id.*).

- After a Court-ordered settlement conference was unsuccessful, Associated filed the present motion to dismiss, Noranda responded, Associated filed a reply and the Court held a hearing on November 29, 2017. (Rec. doc. 31 (Transcript)).

- The Court thereafter ordered counsel for Associated to supplement the record with proof of the fees and costs incurred by Associated in connection with the original motion to compel and the motion for sanctions. (Rec. doc. 29).

### B. **Applicable Law**

Associated seeks dismissal of Noranda's claims under Rules 37 and 41 of the Federal Rules of Civil Procedure. The Court discusses the provisions of each rule separately.

1. *Dismissal under Rule 37*

"It is firmly established that a district court is authorized under [Rule] 37(b)(2)(C) to dismiss a complaint with prejudice when a party refuses to obey a valid discovery order." *Batson v. Neal Spelce Assocs.*, 765 F.2d 511, 514 (5th Cir. 1985)(citing *National Hockey League v. Metro Hockey Club, Inc.*, 427 U.S. 639, 640, 96 S.Ct. 2778, 2779 (1976); *Jones v. Louisiana State Bar Association*, 602 F.2d 94, 96 (5th Cir. 1979)(per curiam)). In exercising that authority, the district court's discretion is broad, although not unlimited; the Fifth Circuit has

emphasized that dismissal with prejudice under Rule 37 is a "draconian" remedy, or a "remedy of last resort," only to be applied in extreme circumstances. *Id.* at 515.

Generally, dismissal under Rule 37 is authorized when the failure to comply with the court's order results from willfulness or bad faith, accompanied by a clear record of delay or contumacious conduct, and not from the inability to comply. *PHI, Inc. v. Office & Professional Employees Intl. Union*, No. 06-CV-1469, 2009 WL 1658040 at *3 (W.D. La. Jun. 11, 2009)(citing *Batson*, 765 F.2d at 514).

> Stated differently,
>> dismissal is appropriate where a party's "failure to comply with discovery has involved either repeated refusals or an indication of full understanding of discovery obligations coupled with a bad faith refusal to comply." *Griffin v. ALCOA*, 564 F.2d 1171, 1172 (5th Cir. 1977). Moreover, dismissal is proper in situations where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. *Batson*, 765 F.2d at 514, citing *Marshall*, 621 F.2d at 768. Additionally, the misconduct must substantially prejudice the other party's preparation for trial. *Id.*; *Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1032 (5th Cir. 1990). Finally, dismissal is inappropriate when neglect is plainly attributable to the attorney rather than the client, or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders. *Batson*, 765 F.2d at 514 citing *Marshall*, 621 F.2d at 768 and *Silas v. Sears, Roebuck & Co.*, 586 F.2d 382, 385 (5th Cir. 1978).
>
> *Id.*

2. *Dismissal under Rule 41*

Rule 41(b) of the Federal Rules of Civil Procedure provides:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule – except one for lack of jurisdiction, improper

8

venue, or failure to join a party under Rule 19 – operates as an adjudication on the merits.

As is the case under Rule 37, dismissal under Rule 41(b) is a "harsh sanction" that is appropriate only where a "clear record of delay or contumacious conduct by the plaintiff exists and lesser sanctions would not serve the best interests of justice." *Price v. McGlathery*, 792 F.2d 472, 474 (5th Cir. 1986)(citing *Rogers v. Kroger Co.*, 669 F.2d 317 (5th Cir. 1982)). Additionally, at least one of three aggravating circumstances should be present: (1) delay caused by plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct. *Id.*

C. **Analysis**

At the outset, the Court notes that the discovery that is subject of this motion – which to this day remains largely unanswered – was propounded well over a year ago. While some delay beyond the normal deadlines might be expected, given the early posture of the case in an ongoing bankruptcy proceeding, there is no reasonable excuse for Noranda to have failed to respond once Associated began asking (and then insisting) on responses beginning on May 3, 2017.

Because Noranda refused to react to Associated's many requests for formal responses over the course of many months, Associated filed its motion to compel. Even then, Noranda's intransigence continued as its counsel appeared for the hearing on that motion to report that, still, no documents had been produced. At this point, the conduct of Noranda and/or its counsel did not rise to a level that would merit dismissal or some other harsh sanction, but, in this Court's view, it could fairly be characterized – at least up to that point – as failing to participate in discovery and, arguably, failing to prosecute its claims.

Noranda was ultimately required by this Court's Order of August 30, 2017 to respond fully and without objection to Associated's discovery requests no later than September 13, 2017. That day came and went with no production having been made by Noranda. And while counsel for Noranda asked Associated for another "day or two" to respond, notably, he did not ask this Court for permission to violate its order – an order only made necessary by Noranda's complete failure to provide a single document in response to discovery that was more than a year old.

Noranda finally provided <u>some</u> responses two days after this Court's deadline to do so, in violation of the August 30 Order. Had those responses been anywhere near full and complete, the Court might excuse their coming two days late. Unfortunately they were not.

Noranda's responses were deficient in a number of respects. Some of the deficiencies had to be rooted out by counsel for Associated and this Court, others were acknowledged by counsel for Noranda. They will all be discussed in turn below.

In response to numerous requests, Noranda failed to produce anything, indicating that it or its counsel were "investigating" whether responsive documents existed (RFP Nos. 24, 26, 56, 63), were "awaiting receipt of additional documents" (No. 42), were "seeking copies" of responsive documents (No. 57) and, despite the vintage of the requests, were still "researching this request" (No. 66). In other words, well over a year after responses were due, and two days after the Court-ordered deadline to answer <u>every</u> request fully and completely, Noranda was still not responding <u>at all</u> to certain requests and relying on the crutch that counsel was "investigating" and "researching" requests to do so. Moreover, Noranda had not informed the Court (1) that its responses were late or (2) that they were

incomplete. And as of the morning of the hearing on this motion – November 29, 2017 – Noranda had yet to supplement any of its deficient responses.

The acknowledged and as-yet-uncorrected shortcomings in Noranda's responses are troubling enough. More troubling are the unacknowledged deficiencies uncovered by Associated and this Court, which establish to this Court's satisfaction that Noranda's failure to comply with this Court's order and its ongoing refusal to cooperate in discovery have been willful.

Chief among Noranda's failings in this regard was its refusal (which is ongoing) to produce key engineering reports in its possession that detailed serious defects in the failed dock structure many years before the March 2016 collapse. These reports, each of which was sent to Noranda, were authored by Lanier & Associates Consulting Engineers, Inc. ("Lanier"); Ragland Aderman and Associates ("Ragland"); and Eustis Engineering, LLC ("Eustis"). (Rec. doc. 17-2). The reports were responsive to numerous requests for production, including at least numbers 9, 10, 13, 14 and 15. (Rec. doc. 17-7). Yet they were discovered by Associated, not after being produced by Noranda, but as a result of Associated's issuance of third-party subpoenas to those three entities. (Rec. doc. 17-1 at p. 7). Each report –and the importance of Noranda's failure to produce them – will be discussed briefly below.

In its January 2013 report to Noranda engineer Pat Harrington,[4] Lanier observed:

> Lanier is of the opinion that the existing dock structure is NOT recommended for long term use in its present condition for the existing crane or any new crane option.

(Rec. doc. 17-2 at p. 3).

---

[4] The Court notes that Pat Harrington is one of the witnesses Associated repeatedly and unsuccessfully attempted to depose throughout 2017.

11

Lanier goes on to make the following recommendation:

> Consider implementing a phased approach in replacing the existing deck with a new dock. A new dock capable of supporting the desired unloading equipment can be designed and constructed in a manner that would minimize interruptions to current vessel unloading schedules.

(*Id.* at p. 4).

The Ragland report (from a September 2012 inspection) contains the following alarming observation:

> The dock structure has been in service for over 50 years. Based on exposure to an extremely large number of cycles of gantry and marine loadings, fatigue effects could change the load carrying capacity of the dock structure. The design code allowable stresses of structural members and connections subjected to cyclic fatigue loadings have been reduced significantly since the time of the original construction of the dock. <u>Combinations of fatigue, corrosion and construction deficiencies have caused past failures. Because of these combined conditions, it is not possible to accurately predict future joint failure or to mitigate all risk of a structural failure.</u> In addition, due to difficult access and surface contamination conditions, there is a risk that deficiencies may go undetected for a period of time. In order to reduce structural risk, continued periodic inspections are recommended with the intent to detect and implement timely repairs of developing cracks before crack growth across an entire member or connections occurs.

(*Id.* at p. 7)(emphasis added).

Finally, in a report prepared for Mr. Harrington, Eustis made the following observations:

> [Noranda] has made numerous observations that indicate the unloading dock is moving toward the river. The rates, directions, and magnitudes of the dock movements are not known because long term monitoring has not been performed…
>
> [Noranda] is consulting with Ragland, Aderman & Associates, Inc., regarding structural issues. [Noranda] has also engaged Lanier & Associates Consulting Engineers, Inc., to assess the

12

>riskiness of the existing dock from a civil/structural standpoint and from a mechanical standpoint. Lanier & Associates was furnished a survey of various features on the unloading dock to assess displacement estimates. . . . <u>This drawing suggests the unloading dock is moving.</u> This issue as well as other topics such as bank stability and structural integrity of the foundation support piles were discussed at a meeting on 17 September 2012 with Mr. James Hance, P.E., of Eustis Engineering; Mr. Patrick Harrington of NA; and·Messrs. E. C. Jackson, James Potter, P.E., and Gil Chatagnier, P.E., of Lanier & Associates. With regard to structural integrity, it was discussed that most steel structures in the Mississippi River have been designed for a 35 to 50-year life span. <u>With this dock being approximately 53 years old, the dock is likely near the end of its life span.</u>

(*Id.* at p. 9) (emphasis added).

These brief passages from the three reports withheld by Noranda speak to two of the most important issues of causation and damages in the case, insofar as Noranda's claim against Associated is concerned. Obviously, reports predating the 2016 collapse that describe a dangerously deteriorated dock structure that is moving into the river and that go so far as to recommend the design and construction of a new dock seriously undermine Noranda's position that Associated caused the dock's collapse years later. Similarly, whether the dock structure had reached the end of its useful life at the time of its collapse is a key question in a case in which Noranda seeks over $1,300,000 in damages from Associated; the answer to this question would surely inform Associated of its exposure for any liability it may have for causing that collapse.

Noranda's failure to produce these key documents – even after they were brought to counsel's attention – cannot be excused. Indeed, when asked why they had <u>still</u> not been produced as of November 29, 2017 (five days before the case had been set for trial), counsel responded:

13

> <u>Judge, I can't explain that</u>. As I said, I personally drove up to Gramercy and sat down with several Gramercy employees and went through the documents and said, This is what I need, this is what I need. And I was given a bunch of documents.
>
> I don't know the full extent of how or where certain documents get stored, and I can't remember the dates of those documents or how old they are, but clearly we have produced a number of documents that refer to the same issues that are in those papers.
>
> THE COURT: Those are pretty important documents in this case, don't you think?
>
> MR. FAY: I understand, Your Honor. And I -- I just -- I can't explain person by person what they did to go through their files to pull each responsive document.

(Rec. doc. 31 at p. 10).

It is unacceptable to this Court that Noranda and its counsel were prepared to allow Associated to go forward with corporate and fact witness depositions in October 2017 and a trial in December 2017 knowing it had not produced such important documents as these. It is likewise unacceptable to this Court that, after being ordered to fully and completely respond to discovery by September 13, 2017, Noranda to this day acknowledges it has not done so but can provide no explanation for its failure, all the while professing that it has acted in "good faith."[5]

This is not good faith – far from it. The Court finds that Noranda's ongoing refusal to participate in discovery and its knowing and ongoing violation of this Court's August 30, 2017 Order are willful for purposes of evaluating the propriety of dismissal under Rules 37 and 41.

---

[5] Noranda pleads its "good faith" no less than three times on the first page of its opposition memorandum alone. (Rec. doc. 23 at p. 1). These incantations cannot overcome facts that say otherwise.

14

Under Rule 37, dismissal is appropriate when failure to comply with the court's order results from willfulness or bad faith, accompanied by a clear record of delay or contumacious conduct, and not from the inability to comply. *PHI, Inc.*, 2009 WL 1658040 at *3. That misconduct must substantially prejudice the other party's preparation for trial. *Batson*, 765 F.2d at 514 (citing *Marshall*, 621 F.2d at 768). And finally, dismissal is proper in situations where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. *Id.*

The framework for dismissal under Rule 41 is similar but somewhat broader, in that dismissal under that Rule may be appropriate, not only for violation of a court order, but also for failing to prosecute a claim or to comply with the Federal Rules of Civil Procedure. Like Rule 37, dismissal under Rule 41 is proper only where the Court finds a "clear record of delay or contumacious conduct by the plaintiff exists and lesser sanctions would not serve the best interests of justice" and at least one of three aggravating circumstances should be present: (1) delay caused by plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct. *Price*, 792 F.2d at 474.

The Court has determined to its satisfaction that the clear record of delay in this case is attributable to willful conduct on the part of Noranda. As for the question of prejudice, it is easily answered here. It is beyond question really that Associated has been prejudiced in the preparation of its defense in this case by the extreme delays occasioned by Noranda's conduct. Despite Associated's practically pleading for discovery responses and deposition dates in the months preceding the filing of the present motion, Noranda failed entirely to respond and, when ordered to do so by this Court, only partially responded. To this day, Noranda admits it is still "investigating" and "researching" certain requests for production.

15

It is also worth noting that the discovery deadline in this case passed on **October 6, 2017**, some three months ago – meaning that Noranda has not only violated this Court's August 30 2017 discovery order but it has also violated the District Judge's Scheduling Order.  It is therefore clear that Associated has been substantially prejudiced, in that it has been denied the opportunity to fully explore the specifics of the claim against it.

The next question under both Rule 37 and 41 is whether the imposition of a lesser sanction would best serve the interests of justice in this case.  For a number of reasons, the Court finds that no lesser sanction would achieve the deterrent values of the Rules or better serve the interests of justice.

First and foremost, the only claim subject to dismissal by virtue of the present motion is one that is not owned by the nominal plaintiff.  By its own admission, both in writing and at the hearing on the motion, Noranda does not own the claim it originally brought in this case – its successor-in-interest, Gramercy Holdings owns the claim.  This anomalous set of circumstances presents three separate but related reasons for finding that no lesser sanction would be appropriate here.

First, while it is <u>generally</u> accurate to say that dismissal with prejudice of a plaintiff's claims is "draconian" and a "remedy of last resort," that can hardly be said in these peculiar circumstances.  Here, Noranda has no claim against Associated; it belongs to another non-party entity that has never made an effort to substitute itself for Noranda.  The Court does not view dismissal of a non-existent claim as draconian.

Relatedly, any lesser sanction, particularly a monetary one, would have <u>no</u> deterrent effect on Noranda at all, as it has no assets or ability to respond to a monetary sanction or even a money judgment against it.  (Rec. doc. 30).  Try as it might, the Court cannot envisage

an alternative sanction that would have any deterrent effect at all in this case, particularly with regard to Noranda.

Finally, to the extent that Gramercy Holdings is wholly or partially responsible for the discovery abuses in this case, that entity is not presently before the Court, so any sanction aimed at it would likely be unenforceable and therefore would have no effect at all.

Before departing the issue, the Court observes that the circumstances described above can be laid entirely at the feet of Gramercy Holdings. Its inexplicable failure after all this time to substitute itself as the proper plaintiff could well provide, in this Court's view, an independent basis for dismissal of Noranda's claim. The Court inquired specifically of Noranda's counsel whether Noranda still owned the claim being asserted in this case and asked why the proper party had not been substituted. After stating that "[i]t is our intention to substitute that party for Noranda," counsel went on to advise the Court that "depending on the outcome of this hearing and Your Honor's decision, we will clean up that detail." (Rec. doc. 31 at pp. 3-4).

The Court does not view the absence of the only party with an actual claim in this case as a "detail" that needs cleaning up. It is not just a detail when every deadline in the case has long passed with Associated having had no opportunity to conduct any discovery on the issue or to traverse Gramercy Holding's claim to ownership of Noranda's erstwhile claim. It is not entirely clear to the Court when ownership of the claim changed hands, but it was no later than September 2017 (and likely long before) according to Noranda's counsel. (*Id.* at pp. 10-11).[6]

---

[6] While it is not entirely clear to the Court why Gramercy Holdings has failed to substitute itself as the plaintiff in this matter, it is abundantly clear that its failure is not due to oversight or lack of knowledge. Indeed, a

17

Rule 17(a)(3) of the Federal Rules provides that [t]he Court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." While the Court views Associated's raising of the issue in its memorandum in support of the present motion as an "objection" sufficient to start the clock ticking under Rule 17(a)(3), it does not find it necessary to recommend dismissal solely for that reason. Rather, it views the failure of Noranda/Gramercy Holdings to substitute the proper party as (1) additional evidence of its bad-faith failure to prosecute under Rule 41, (2) evidence that mitigates against the "harshness" of dismissal under Rules 37 and 41, and (3) evidence that establishes the inefficacy of a sanction other than dismissal.

In sum, Noranda's willful discovery abuses and unjustified delays in responding to legitimate discovery, including the ongoing violation of this Court's August 30 2017 Order, have created the sort of "discovery fiasco" that the Fifth Circuit has previously held merits a dispositive sanction. *See United States v. $49,000 Currency*, 330 F.3d 371, 379 (5th Cir. 2003). Noranda's conduct has caused actual, substantial prejudice to Associated in depriving it of the opportunity to explore and understand the details of the claim against it. And it is clear to the Court that no lesser sanction would serve the deterrent purpose of Rule 37 or otherwise serve the best interests of justice. Accordingly, the Court will recommend that Associated's motion to dismiss be granted and that Noranda's claim be dismissed with prejudice under Rules 37 and 41.[7]

---

representative of <u>Gramercy Holdings</u>, not Noranda, attended the settlement conference convened by this Court on November 1, 2017, more than two months ago.

[7] Because the Court's recommendation for dismissal with prejudice is based, in part, on the conclusion that nominal plaintiff Noranda is without any means to satisfy a monetary sanction or judgment in this case, and because Gramercy Holdings is not currently before the Court, an award of reasonable attorneys' fees or costs is not being recommended against either entity.

18

**RECOMMENDATION**

**IT IS RECOMMENDED** that Associated's motion to dismiss with prejudice for failure to comply with a court order and abuse of discovery be **GRANTED** and that the claim(s) of Noranda Alumina LLC be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996)(en banc).[8]

New Orleans, Louisiana, this 2nd day of _____January_____, 2018.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[8] *Douglass* referenced the previously applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.